UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ANTHONY DAVIS,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY OF SAN JOSE, et al.,<br><br>    Defendants. | Case No. 14-cv-02035-BLF<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT**<br><br>[Re: ECF 33] |

In this civil rights lawsuit against individual police officers of the San Jose Police Department, defendants Michael Montonye, Tyler Krauel, and Thomas Boyle (collectively "Defendants") have moved to dismiss the Third Amended Complaint ("TAC") by plaintiff Anthony Davis for failure to state a claim.[1]  Def.'s Mot., ECF 33.  On September 18, 2014, the Court heard oral argument on Defendants' motion.  Having considered the parties' respective written submissions as well as the oral argument of counsel, the Court hereby GRANTS IN PART and DENIES IN PART Defendants' Motion to Dismiss for the reasons stated herein.

**I.   BACKGROUND**

On June 20, 2014, this Court dismissed Plaintiff's Second Amended Complaint with leave to amend, finding that Plaintiff had not alleged sufficient facts to suggest a plausible entitlement to relief for his civil rights and tort claims against Defendants and against the City of San Jose.  *See* Order, ECF 31.  Plaintiff then filed the TAC before the Court.  The following facts from the TAC are taken as true and viewed in the light most favorable to Plaintiff:

---

[1] Although the City of San Jose is still identified as a defendant in the captions to both parties' briefing, it appears that Plaintiff is no longer pursuing claims against the city in his TAC.  The City of San Jose is accordingly DISMISSED from this action.

On May 5, 2012, Plaintiff was celebrating Cinco de Mayo with his girlfriend, Ms. Pascasio, on Santana Row in San Jose, California, when they had a "brief non-violent verbal dispute." TAC ¶ 12, ECF 32. Ms. Pascasio ended up in the parking structure at Steven's Creek Mall, where Plaintiff went to go check on her. Around this time, Defendants arrived in response to "a non-descript 'disturbing the peace' call for service after a witness indicated seeing a young woman sitting in a parking structure crying." *Id.* While Plaintiff waited inside his car, Defendants "confronted Ms. Pascasio," who was "visibly upset and yelled expletives" at Defendants, "but also informed the officers that she was okay and just wanted to be left alone." *Id.* ¶ 13. Ms. Pascasio then walked away from Defendants "and the area where Plaintiff could monitor her well-being," so Plaintiff left his parked car to follow her. Defendants allegedly "left the immediate vicinity and returned to their regular duties monitoring the area from within a security office." *Id.*

"Minutes later," as Plaintiff attempted to console his girlfriend, Defendants returned and approached the couple despite Ms. Pascasio "waving her open hand while shaking her head as she again told Defendant officers she was okay and did not need their assistance."[2] *Id.* ¶ 14. As Defendants continued their approach, Plaintiff "put one hand around the waist of Ms. Pascasio" then "put his hand over Ms. Pascasio's mouth to prevent her from making any further disparaging remarks." *Id.* ¶ 15. With his arm around her waist and his hand over her mouth, Plaintiff attempted to explain that his girlfriend "suffered from a bi-polar disorder and was experiencing an episode due to a recent ween off of her proscribed [sic] medication." *Id.* ¶ 16.

Defendants, allegedly without any warning or statement that indicated their intent to detain or arrest either Plaintiff or Ms. Pascasio, "threw several striking blows to Plaintiff's head" then "threw Plaintiff to the ground." *Id.* Defendants "kicked Plaintiff all over his body and in the face" and "repeatedly slammed Plaintiff's head against the ground." *Id.* ¶ 18. They put Plaintiff into a chokehold and, despite his "moan[ing], "I can't breathe," kept him in the chokehold until he lost

---

[2] Defendants contend that some of these allegations are "inaccurate, unsupported by the evidence available to the parties, and inconsistent." Def.'s Mot. 3 n.2. While these assertions may be correct, at the pleading stage the Court takes Plaintiff's allegations as true and does not weigh credibility. Moreover, the Court assumes that Plaintiff's counsel is aware of his obligation under Rule 11 and has not made any factual contentions without evidentiary support.

consciousness. *Id.* ¶¶ 18-19.

Plaintiff regained consciousness in an ambulance. *Id.* ¶ 20. He later underwent surgery for a nasal fracture and deviated septum and was treated for a fractured hand and finger. *Id.* Plaintiff was also charged with assaulting an officer and resisting arrest, though those charges were dismissed. *Id.* ¶ 21.

## II. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock Inc.*, 349 F.3d 1191, 1199-200 (9th Cir. 2003). To survive a motion to dismiss, a complaint must plead sufficient "factual matter, accepted as true" to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In assessing the sufficiency of a plaintiff's pleadings, "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.* The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," and a complaint that pleads facts that are "merely consistent with" a defendant's liability "stops short of the line between possibility and plausibility." *Id.* (internal quotations omitted).

If a motion to dismiss is granted, a court should normally grant leave to amend, "even if no request to amend the pleading was made," unless amendment would be futile. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotations omitted). However, a district court's discretion to deny leave to amend is "particularly broad" where a plaintiff has previously amended. *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (citing *Sisseton–Wahpeton Sioux Tribe v. United States,* 90 F.3d 351, 355 (9th Cir.1996)).

## III. DISCUSSION

Plaintiff's TAC asserts seven claims against Defendants: three claims pursuant to 42 U.S.C. § 1983 for unlawful detention (First Cause of Action ("COA")), unlawful arrest (Second COA), and excessive force (Third COA), as well as state law claims for intentional infliction of emotional distress (Fourth COA), violation of California Civil Code § 52.1 (Fifth COA), assault

and battery (Sixth COA), and negligence (Seventh COA).  Defendants contend that all of these claims are deficient.  The Court addresses the federal and state law claims separately.

### A.  Section 1983 Claims

To state a claim under § 1983, a plaintiff must allege that "(1) the defendants acting under color of state law (2) deprived plaintiff[] of rights secured by the Constitution or federal statutes." *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986).  Even if a plaintiff plausibly alleges the deprivation of a constitutional right under color of state law, government officials are protected from liability for civil damages by the doctrine of qualified immunity "unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Wood v. Moss*, 134 S. Ct. 2056, 2066-67 (2014) (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011)).

In dismissing the Second Amended Complaint, this Court instructed Plaintiff to allege specific facts concerning "the circumstances leading up to and surrounding [Defendants'] alleged misconduct."  Order at 8-9, ECF 31.  While the TAC contains more facts, Defendants contend that the TAC is still insufficient either to allege plausible violations of the Fourth Amendment or establish that Defendants are not entitled to qualified immunity.  Def.'s Mot. 11-15.  The Court disagrees.  While Plaintiff's allegations are insufficient as to his claims for unlawful detention and arrest, they are sufficient to establish a plausible claim for excessive force.

#### i.  Unlawful Detention and Unlawful Arrest (First and Second COA's)

"Whenever an officer restrains the freedom of a person to walk away, he has seized that person." *Tennessee v. Garner*, 471 U.S. 1, 7, 105 S. Ct. 1694, 1699 (1985).  A seizure is unreasonable under the Fourth Amendment if it is an arrest made without probable cause or a detention short of arrest made without reasonable suspicion. *Dubner v. City & Cnty. of San Francisco*, 266 F.3d 959, 964 (9th Cir. 2001); *Florida v. Royer*, 460 U.S. 491, 498 (1983).  An officer may detain an individual short of arrest if the detaining officer has an "articulable suspicion that a person has committed or is about to commit a crime." *Royer*, 460 U.S. at 498.  Probable cause to arrest exists when, "under the totality of the circumstances known to the arresting officers . . . a prudent person would believe the suspect had committed a crime." *Dubner*, 266 F.3d at 966.

1  Here, while Defendants' alleged physical altercation with Plaintiff unquestionably
2  amounted to a seizure, Plaintiff's own allegations indicate that there was reasonable suspicion to
3  detain and probable cause to arrest him for violating California Penal Code § 148(a), which
4  applies when a person "willfully resists, delays, or *obstructs* any . . . peace officer . . . in the
5  discharge or attempt to discharge any duty of his or her office or employment." Cal. Penal Code §
6  148(a)(1) (emphasis added); *see* Def.'s Reply 3, ECF 35 (suggesting that the charges permit an
7  inference that Plaintiff interfered with Ms. Pascasio's detention or arrest). This conclusion is
8  bolstered by Plaintiff's own allegation that he was later charged with "assaulting an officer and
9  resisting arrest," which this Court infers to be a charge for violating section 148(a).[3] TAC ¶ 21.

10 According to Plaintiff's allegations, Defendants arrived to investigate a call about a woman
11 crying in a parking lot, where they encountered a volatile and hostile Ms. Pascasio who told them
12 to leave her alone. When, a short time later, Defendants approached Ms. Pascasio again, she was
13 in Plaintiff's company and—most saliently—Plaintiff put his hand around Ms. Pascasio's waist
14 and another hand over her mouth, interfering with her ability to respond to Defendants. TAC ¶ 15.
15 This rather aggressive action was, even in Plaintiff's own admission, not appropriate under the
16 circumstances. *See* Pl.'s Opp. 7 ("Plaintiff's choice of actions in putting his hand over Ms.
17 Pascasio's mouth may not have been consistent with best practices"). Contrary to Plaintiff's
18 unexplained assertions that "[n]othing Plaintiff did even amounted to an even 'inchoate suspicion'
19 of criminal conduct," *id.* at 4, and that "Defendant officers never viewed any crime," *id.* at 5, a
20 prudent person under the totality of circumstances alleged in the TAC would believe that
21 Plaintiff's physical restraint of Ms. Pascasio was a willful obstruction of the Defendants'
22 legitimate law enforcement activities. Thus, the totality of the circumstances as alleged by
23 Plaintiff permit a reasonable inference that Defendants had probable cause to arrest Plaintiff under
24 section 148(a)(1) for his affirmatively willful act of physically restraining Ms. Pascasio and
25 thereby obstructing the discharge of Defendants' duty to investigate Ms. Pascasio's wellbeing.
26 Defendants' Motion to Dismiss Plaintiff's First COA for unlawful detention and Second

---

[3] Plaintiff did not challenge this inference when raised by the Court at the September 18, 2014 hearing.

5

COA for unlawful arrest is accordingly GRANTED with prejudice.

### ii. Excessive Force (Third COA)

Claims of excessive force in the course of an authorized arrest or detention "should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989). Whether a particular seizure is reasonable must be "judged from the perspective of a reasonable officer on the scene," *id.* at 396, and "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight," *id.*

Defendants argue that Plaintiff's claim for excessive force is deficient because it still omits facts needed to establish a plausible claim that their conduct was unreasonable. Def.'s Mot. 12. Moreover, Defendants contend that Plaintiff has failed to establish that they are not entitled to qualified immunity. *Id.* at 15. Plaintiff maintains that the TAC is sufficient because, according to his allegations, Defendants did not state any intent to detain or arrest either Ms. Pascasio or Plaintiff before physically assaulting him. Pl.'s Opp. 7; TAC ¶ 16.

The Court agrees that the TAC sufficiently alleges a plausible claim for excessive force. Although the allegations indicate that Defendants had probable cause to arrest Plaintiff for obstructing their duties, Plaintiff has alleged that Defendants physically assaulted him without announcing their intent to detain, continued to strike him after he was on the ground, and placed him into a chokehold that ultimately caused him to lose consciousness. TAC ¶¶ 16, 18-19. This conduct and the seriousness of Plaintiff's alleged injuries, if taken as true, suggest that the quantum of force Defendants used was beyond that which was reasonable to separate Plaintiff from Ms. Pascasio and arrest an allegedly unresisting Plaintiff for the misdemeanor of obstructing Defendants' duties.[4]

Whether Plaintiff has successfully alleged around qualified immunity presents a closer

---

[4] The Court notes that Plaintiff acknowledges he was charged with "assaulting an officer." TAC ¶ 21. However, the Court must take Plaintiff's allegations in the TAC as true, and there are no allegations of Plaintiff's physical conduct toward Defendants.

1  question. This Court previously admonished Plaintiff that he must identify the right that
2  Defendants allegedly violated with a greater degree of specificity than simply "an unreasonable
3  seizure violates the Fourth Amendment." Order at 8. Plaintiff has not done so in the TAC, again
4  alleging that Defendants violated his right "to be free from excessive force and/or the arbitrary
5  and/or unreasonable use of deadly force against him." TAC ¶ 30. Plaintiff's opposition is no
6  better, arguing in a conclusory manner that "[t]he standards of law in *Terry v. Ohio* and *Graham*
7  [*v.*] *Connor* are well settled areas of law commonly known to every police officer." Pl.'s Opp. 8.

On balance, given the severity of Plaintiff's alleged injuries, the allegations in the TAC are sufficient to indicate that it was clearly established that police officers should not "continue[] to beat" a suspect once he's been thrown to the ground or place a suspect in a chokehold so as to render him unconscious when he does not resist being arrested for obstructing police duties. TAC ¶¶ 16, 18-20; *see Santos v. Gates*, 287 F.3d 846, 853-54 (9th Cir. 2002). This does not mean that Defendants would not be able to establish qualified immunity at summary judgment with a more developed set of facts.[5] However, at this early pleading stage, the Court concludes that Plaintiff's allegations are sufficient to plausibly claim that Defendants violated a right to be free from excessive force that was clearly established at the time of the challenged conduct.

Defendants' Motion to Dismiss is accordingly DENIED with respect to Plaintiff's Third COA for excessive force.

### B. State Law Claims

#### i. Intentional Infliction of Emotional Distress (Fourth COA)

This Court previously dismissed Plaintiff's claim for intentional infliction of emotional distress ("IIED") for failing to allege facts "to show that Plaintiff's distress met the high bar set by the California Supreme Court" and for failing to sufficiently establish that Defendants' conduct was "extreme and outrageous." Order at 12. The TAC contains no allegations of Plaintiff's

---

[5] Defendants' argument that the TAC omits facts showing their use of force was reasonable, Def.'s Mot. 15, is well-taken but unavailing. At the pleading stage, Plaintiff is not required to plead his whole case, and the Court looks only at what the plaintiff has alleged. Past the pleading stage, Defendants may introduce evidence of their version of events, and it may well be that Defendants can establish qualified immunity at summary judgment.

7

emotional distress, and Plaintiff's opposition brief states only that "he will be able to demonstrate by a preponderance of evidence that he suffered severe emotional distress." Pl.'s Opp. 8.

Asserting that he can satisfy his burden at trial does not excuse Plaintiff from pleading facts to place Defendants on notice of the factual basis for his claims. Because Plaintiff has failed to satisfy his pleading burden, Defendants' Motion to Dismiss Plaintiff's Fourth COA for intentional infliction of emotional distress is GRANTED with prejudice.

### ii. California Civil Code § 52.1 (Fifth COA)

The California Civil Code § 52.1, also known as the Bane Act, serves as a state law remedy for constitutional or statutory violations accomplished through intimidation, coercion, or threats. Cal. Civ. Code § 52.1. Although analogous to § 1983, it is not tantamount to a § 1983 violation, requiring more than evidence of a violation of rights. *Bass v. City of Fremont*, No. C12-4943 TEH, 2013 WL 891090, at *4 (N.D. Cal. Mar. 8, 2013); *see also Austin B. v. Escondido Union Sch. Dist.*, 149 Cal. App. 4th 860, 883 (2007) ("The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., "threats, intimidation or coercion"), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law.").

This Court previously dismissed Plaintiff's Bane Act claim with leave to amend so that Plaintiff could plausibly state claims for unlawful detention, arrest, and/or excessive force. Order at 13. As discussed above, Plaintiff has failed to plausibly claim that his detention and arrest were unlawful. The Court is thus faced with the question of whether the Bane Act can be asserted to address a claim of excessive force where there is no other constitutional or statutory violation. The parties, given their divergent views on the lawfulness of Plaintiff's detention and arrest, have not addressed this situation in depth. Def.'s Mot. 17-18; Pl.'s Opp. 8; Def.'s Reply 6-7.

The Court first notes that there is a continuing split of authority on this issue. As Defendants argue, some courts have held that something more than an inherently coercive violation is required to state a claim under the Bane Act. *See Luong v. City & Cnty. of San Francisco*, No. C11-5661 MEJ, 2012 WL 5869561 (N.D. Cal. Nov. 19, 2012); *Hunter v. City & Cnty. of San Francisco*, No. 11-4911 JSC, 2012 WL 4831634 (N.D. Cal. Oct. 10, 2012); *Lanier v. City of Fresno*, No. CV F 10-1120 LJO SKO, 2011 WL 149802, at *4 (E.D. Cal. Jan. 18, 2011).

8

1    Other courts, interpreting *Shoyoye v. County of Los Angeles*, 203 Cal. App. 4th 947 (2012),
2    narrowly, have held that the essence of *Shoyoye* is that § 52.1 "was not intended to redress harms
3    'brought about by human error rather than intentional conduct." *Bass*, 2013 WL 891090, at *5
4    (quoting *Shoyoye*, 203 Cal. App. 4th at 959, and noting that *Shoyoye* involved a plaintiff who was
5    over-detained in the county jail due to an employee's unintentional and negligent handling of
6    inmate paperwork). Several cases have applied the Bane Act to a claim of excessive force alone.
7    *Cardoso v. Cnty. of San Mateo*, No. C 12-05130 CRB, 2013 WL 900816 (N.D. Cal. Jan. 11, 2013)
8    (plaintiff claimed that after her arrest, and while she was in her jail cell, a deputy walked in, called
9    her "stupid" and violently twisted her arm causing a fracture); *Rodriguez v. City of Modesto*, No.
10   1:10-CV-01370-LJO, 2013 WL 6415620, at *10-13 (E.D. Cal. Dec. 9, 2013) (plaintiff claimed
11   intentional excessive force in connection with arrest under Cal. Penal Code § 148(a)).

12   This split in authority has not been resolved by the California Court of Appeal or Supreme
13   Court. The most recent decision on the issue is *Bender v. County of Los Angeles*, 217 Cal. App.
14   4th 968 (2013), where the California Court of Appeal left open the issue whether the Bane Act
15   would apply in a case involving the alleged use of excessive force during an otherwise lawful
16   arrest based on probable cause. *Id.* at 978; *see also Rodriguez*, 2013 WL 6415620, at *13 (noting
17   that "*Bender* directly *avoids* addressing" the present circumstance). The *Bender* court ruled in a
18   case where it determined that there was *both* an unlawful arrest and excessive force was applied in
19   making that arrest. *Bender*, 217 Cal. App. 4th at 981.

20   Having carefully considered the holdings in *Shoyoye* and *Bender*, which apply the
21   California Supreme Court's holding in *Venegas v. County of Los Angeles*, 32 Cal. 4th 820 (2004),
22   the Court finds that the Bane Act may extend to claims of deliberate and spiteful harm where the
23   allegations, taken as true, demonstrate physical beating and injury in support of a claim for
24   deprivation of one's constitutional right to be free from excessive force.[6] *Shoyoye* does not

---

[6] This Court does not intend to suggest that all claims for excessive force may be brought under the Bane Act. Here, however, the TAC alleges that Plaintiff did not resist in any way and that Defendants beat, kicked, and choked him without any provocation or threat that he would harm or otherwise resist their authority. Under those alleged facts, which are taken as true, Plaintiff has plausibly claimed that the quantum of force used against him was not only excessive but also likely deliberate and spiteful.

9

1    prohibit the application of the Bane Act in this circumstance. The *Shoyoye* court limited its denial
2    of Bane Act relief to cases where the constitutional or statutory violation "occurs because of mere
3    negligence rather than a volitional act intended to interfere with the exercise or enjoyment of a
4    constitutional right." *Shoyoye*, 203 Cal. App. 4th at 957 (cited with approval in *Bender*, 217 Cal.
5    App. 4th at 979).

Thus, Defendants' Motion to Dismiss Plaintiff's Fifth COA for violation of the Bane Act is DENIED without prejudice to reasserting this argument based on a more complete record.

### iii. Assault and Battery (Sixth COA)

Defendants contend that Plaintiff's claim for assault and battery fails because California law authorizes the use of force to effectuate an arrest. Def.'s Mot. 19; Cal. Penal Code § 835a. Section 835a, however, only authorizes "reasonable force," and a claim for battery against a police officer has, as an essential element, the use of unreasonable force. *Edson v. City of Anaheim*, 63 Cal. App. 4th 1269, 1273 (1998). Here, because the Court has determined that Plaintiff has plausibly alleged a claim for excessive force, Plaintiff's claim for battery is likewise sufficient. Defendants' Motion to Dismiss is therefore DENIED with respect to Plaintiff's Sixth COA for assault and battery.[7]

### iv. Negligence (Seventh COA)

As with Plaintiff's claim for assault and battery, Plaintiff's negligence claim based on Defendants' breach of a duty to refrain from using excessive force rises and falls with his Fourth Amendment claims. *See* TAC ¶¶ 40-41; *Hernandez v. City of Pomona*, 46 Cal. 4th 501, 513-17 (2009). Defendants do not dispute this. Def.'s Mot. 20. Because Plaintiff has plausibly alleged that Defendants' use of force was not reasonable under the Fourth Amendment, Defendants' Motion to Dismiss is accordingly DENIED as to Plaintiff's Seventh COA for negligence.

### C.   Damages Allegations

Defendants argue that Plaintiff's request for punitive damages is not adequately pled under

---

[7] The Court notes that "assault" and "battery" are two distinct civil claims with different elements. *See Yun Hee So v. Sook Ja Shin*, 212 Cal. App. 4th 652, 668-69, 151 Cal. Rptr. 3d 257, 269 (2013), *as modified on denial of reh'g* (Jan. 28, 2013). Defendants' arguments focus on battery, and they do not argue that the allegations are insufficient to maintain a claim for assault.

10

1    either federal or state law.  Def.'s Mot. 20.  Additionally, Defendants contend that there is no legal

2    basis for Plaintiff's request for damages pursuant to California Civil Code § 52(b).  *Id.* at 21.

3    Plaintiff does not address the issue of punitive damages and argues conclusorily that mandatory

4    damages under section 52(b)(2) are authorized by his Bane Act claim.  Pl.'s Opp. 8-9.

5          Because Plaintiff's claims for excessive force and assault and battery survive dismissal, the

6    Court will not foreclose Plaintiff from seeking punitive damages with respect to those claims.

7    Moreover, as this Court previously noted, it is not clear that binding Ninth Circuit precedent

8    authorizes striking a prayer for punitive damages.  Order at 15.  Nor can this Court conclude on

9    the face of the complaint that Defendants did not act with "reckless or callous indifference to the

10   federally protected rights of others."  *Smith v. Wade*, 461 U.S. 30, 56 (1983).

11         Defendants further argue that Plaintiff is not entitled to recover damages under California

12   Civil Code § 52(b).  Defendants point to the plain language of that provision, which states:

13   "Whoever denies the right provided by Section 51.7 or 51.9 . . . is liable for [actual and exemplary

14   damages]."  Cal. Civ. Code § 52(b), (b)(1).  Subsection (b)(2) provides for a mandatory penalty of

15   "twenty-five thousand dollars ($25,000) to be awarded to the person denied the right provided by

16   Section 51.7 in any action brought by the person denied the right."  *Id.* § 52(b)(2).  Plaintiff relies

17   on *Los Angeles County Metropolitan Transportation Authority v. Superior Court*, 123 Cal. App.

18   4th 261 (2004), for the proposition that "Cal. Civ. Code § 52.1 permits a prevailing Plaintiff to

19   recover civil penalties under § 52(b)(2)."  Pl.'s Opp. 9.  However, Defendants reply that the case

20   addressed penalties under section 52(b)(2) only with respect to claims under California Civil Code

21   § 51.7—in accord with the plain language of section 52(b)—and did not address penalties for

22   violations of the Bane Act, which is nowhere mentioned in section 52.  Def.'s Reply 7.

23         This Court notes that the Bane Act itself permits recovery under section 52 but does not

24   limit recovery to any subsection, of which there are several.  *See* Cal. Civ. Code § 52.1(b); *see*

25   *generally id.* § 52.  There are, however, also no cases in which a court has awarded penalties under

26   section 52(b) for Bane Act violations.  This ambiguity is noted in the Judicial Council of

27   California Civil Jury Instruction for the Bane Act, which nevertheless concludes that "the

28   reference to section 52 in subsection (b) of the Bane Act would seem to indicate that damages may

be recovered under both subsections (a) and (b) of section 52." CACI 3066 (Directions for Use). Given that the Bane Act was enacted after sections 51.7 and 52, *see Stamps v. Superior Court*, 136 Cal. App. 4th 1441, 1446-48 (2006) (discussing history of the Bane and Ralph Acts), and the lack of any case law or legislative intent suggesting that recovery for violations of the Bane Act should be limited to any subsection of section 52, the Court concludes that a plain reading of an unambiguous statute (section 52.1) allows Plaintiff to pursue damages under section 52(b).[8]

Defendants' Motion to Dismiss Plaintiff's claims for punitive and statutory damages is therefore DENIED.

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Defendants' Motion to Dismiss is GRANTED with respect to Plaintiff's First, Second, and Fourth Causes of Action. Those claims are DISMISSED with prejudice.
2. Defendants' Motion to Dismiss is DENIED with respect to Plaintiff's Third, Fifth, Sixth, and Seventh Causes of Action, and with respect to Plaintiff's damages claims.

**IT IS SO ORDERED.**

Dated: September 24, 2014

BETH LABSON FREEMAN
United States District Judge

---

[8] As presently pled, Plaintiff's Prayer for Relief appears to be requesting statutory damages under both sections 52.1 and 52. *See* TAC, at 9. Based on the foregoing discussion, the Court would construe this request to be for statutory damages authorized by section 52.1, which would be those identified in section 52.

12